# 21-1440

*To Be Argued By*:
SAMUEL RAYMOND

# United States Court of Appeals

## FOR THE SECOND CIRCUIT
## Docket No. 21-1440

◀━◆◆◆━▶

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

TASLEEM KHAN,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR THE UNITED STATES OF AMERICA

DAMIAN WILLIAMS,
*United States Attorney for the
Southern District of New York,
Attorney for the United States
of America.*
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2200

SAMUEL RAYMOND,
DANIELLE R. SASSOON,
*Assistant United States Attorneys,
Of Counsel.*

# TABLE OF CONTENTS

PAGE

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.  Khan's Underlying Conviction. . . . . . . . . . . 2

    B.  Khan's Violations of Probation . . . . . . . . . . 4

    C.  Khan's Sentencing . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT:

POINT I—Khan's Appeal Will Soon Be Moot . . . . . . 7

POINT II—Khan's Sentence was Reasonable . . . . . . 9

    A.  Applicable Law . . . . . . . . . . . . . . . . . . . . . . . 9

    B.  Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        1.  Khan's Sentence was Procedurally
            Reasonable . . . . . . . . . . . . . . . . . . . . . . 11

        2.  Khan's Sentence was Substantively
            Reasonable . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

*Cases*:

*Gall v. United States,*
    552 U.S. 38 (2007). . . . . . . . . . . . . . . . . . . . . . . . 10

PAGE

*Levine v. Apker,*
    455 F.3d 71 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . 8

*Spencer v. Kemna,*
    523 U.S. 1 (1998). . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*United States v. Aldeen,*
    792 F.3d 247 (2d Cir. 2015) . . . . . . . . . . . . . . . 8, 10

*United States v. Allen,*
    662 F. App'x 80 (2016) . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Benton,*
    763 F. App'x 130 (2d Cir. 2019) . . . . . . . . . . . . . . 8

*United States v. Blackburn,*
    461 F.3d 259 (2d Cir. 2006) . . . . . . . . . . . . . . . . . 8

*United States v. Brooks,*
    889 F.3d 95 (2d Cir. 2018) . . . . . . . . . . . . . . . . . 10

*United States v. Broxmeyer,*
    699 F.3d 265 (2d Cir. 2012) . . . . . . . . . . . . . 11, 16

*United States v. Cavera,*
    550 F.3d 180 (2d Cir. 2008) . . . . . . . . . .   10, 11, 18

*United States v. Chu,*
    714 F.3d 742 (2d Cir. 2013) . . . . . . . . . . . . . . . . 10

*United States v. Dowdell,*
    No. 20-4094, 2021 WL 5170728
    (2d Cir. Nov. 8, 2021) . . . . . . . . . . . . . . . . . . . 12, 14

*United States v. Fernandez,*
    443 F.3d 19 (2d Cir. 2006) . . . . . . . . . . . . . . . . . 17

PAGE

*United States v. Jones,*
460 F.3d 191 (2d Cir. 2006) . . . . . . . . . . . . . . . . 11

*United States v. Lockett,*
841 F. App'x 342 (2d Cir. 2021) . . . . . . . . . . . . . . 9

*United States v. Mercurris,*
192 F.3d 290 (2d Cir. 1999) . . . . . . . . . . . . . . . . 7

*United States v. Pattee,*
820 F.3d 496 (2d Cir. 2016) . . . . . . . . . . . . . 10, 15

*United States v. Probber,*
170 F.3d 345 (2d Cir. 1999) . . . . . . . . . . . . . . 8, 9

*United States v. Sindima,*
488 F.3d 81 (2d Cir. 2007) . . . . . . . . . . . . . 14, 15

*United States v. Smith,*
949 F.3d 60 (2d Cir. 2020) . . . . . . . . . . . . . . . . 10

*United States v. Verkhoglyad,*
516 F.3d 122 (2d Cir. 2008) . . . . . . . . . . . . *passim*

*United States v. Williams,*
475 F.3d 468 (2d Cir. 2007) . . . . . . . . . . . . . . . . 7

*United States v. Wiltshire,*
772 F.3d 976 (2d Cir. 2014) . . . . . . . . . . . . . . . . 9

*Statutes, Rules & Other Authorities*:

18 U.S.C. § 3583(e) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

U.S.S.G. § 1B1.9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

U.S.S.G. § 7B1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

iv

PAGE

U.S.S.G. Ch. 7, Pt. A(3)(b) . . . . . . . . . . . . . . . . . . . . . 14

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

## Docket No. 21-1440

———————

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

TASLEEM KHAN,

*Defendant-Appellant.*

———————

## BRIEF FOR THE UNITED STATES OF AMERICA

———————

## Preliminary Statement

Tasleem Khan appeals from a judgment of revocation entered on June 8, 2021, in the United States District Court for the Southern District of New York, following a guilty plea before the Honorable Kimba M. Wood, United States District Judge.

On December 8, 2020, the United States Probation Office (the "Probation Office") filed a third amended violation petition with five specifications. The first three specifications pertained to state crimes Khan allegedly committed on March 3, 2020. Specification One alleged that Khan had committed the New Jersey state crime of terroristic threats. Specification Two

alleged that Khan had committed the New Jersey state crime of possession of a weapon with an unlawful purpose. Specification Three alleged that Khan had committed the New Jersey state crime of unlawful possession of a weapon. Specification Four alleged that Khan had used marijuana on or before September 2, 2020. Specification Five alleged that Khan had used cocaine on or before October 1, 2020.

On March 3, 2021, Khan admitted to Specifications Three, Four, and Five. On May 20, 2021, Judge Wood revoked Khan's term of probation and sentenced Khan to 6 months' imprisonment, with no term of supervised release to follow.

Khan is currently serving his term of imprisonment and his expected release date is January 30, 2022.

## Statement of Facts

### A. Khan's Underlying Conviction

In June 2017, Khan perpetrated a scheme to defraud individuals who posted cellphones for sale on Craiglist. (PSR ¶ 7).[1] On two occasions, Khan

---

[1] "PSR" refers to the Presentence Investigation Report prepared by the United States Probation Office (the "Probation Office") in connection with Khan's sentencing for his underlying conviction; "Br." refers to Khan's brief on appeal; "A." refers to the appendix filed with that brief; "VR1" refers to the violation report prepared by the Probation Office in connection with Khan's first violations of probation dated March 11, 2020; "Am. VR3" refers to the third amended violation

communicated via electronic means with individuals trying to sell their cellphones on Craiglist and agreed to meet them. (PSR ¶ 7). At the meetings, Khan posed as a law enforcement officer, displayed a shield or badge, lied to the victims that their cellphones were stolen property, and threatened them with legal action. (PSR ¶ 7). On one occasion, Khan successfully stole the victim's cellphone; the other time, he was unsuccessful. (PSR ¶ 7).

Information 18 Cr. 139 (KMW), was filed on February 20, 2018, charging Khan with wire fraud, in violation of 18 U.S.C. §§ 1343 and 2. On April 17, 2018, Superseding Information S1 18 Cr. 139 (KMW/OTW) (the "Superseding Information") was filed, charging Khan with the misdemeanor offense of transferring a counterfeit official insignia in interstate commerce, in violation of 18 U.S.C. § 716. (PSR ¶¶ 1-2). That day, Khan pleaded guilty to the Superseding Information before the Honorable Ona T. Wang, United States Magistrate Judge, pursuant to a plea agreement with the Government. (PSR ¶ 3).

On August 17, 2018, Judge Wang sentenced Khan principally to three years' probation. (Dkt. 38). He began serving his term of probation the following day, in the district of his residence, the District of New Jersey.

----

report prepared by the Probation Office dated December 8, 2020; and "Dkt." refers to an entry on the District Court's docket for this case. Unless otherwise noted, case text quotations omit all internal quotation marks, citations, and alterations.

### B.  Khan's Violations of Probation

On March 3, 2020, while still serving his term of probation, Khan was in his house in New Jersey and began arguing with his brother-in-law and sister. (Am. VR3 at 2-4; Dkt. 82 at 1). During the argument, Khan (who was on the first floor) picked up a knife and waved it in front of him as he yelled at his brother-in-law (who was standing on the second floor). (Am. VR3 at 2-4; Dkt. 82 at 1). Khan's actions led his brother-in-law to rationally fear for his physical safety. (Dkt. 82 at 1).

In March 2020, the Probation Office filed a violation petition alleging that Khan had committed two violations of probation arising from the incident on March 3, 2020. (VR1 at 1-10). As ultimately amended on December 8, 2020, the petition contained five specifications, the first three pertaining to the March 3, 2020 incident. The petition alleged that Khan: (1) violated New Jersey Criminal Statute 2C:12-3B, by making statements to victims indicating he would hurt or kill the victims while in possession of a knife; (2) violated New Jersey Criminal Statute 2C:39-4D, by possessing a knife with an unlawful purpose; (3) violated New Jersey Criminal Statute 2:39-5D, by possessing a knife under circumstances not manifestly appropriate for lawful use; (4) used marijuana on or before September 2, 2020; and (5) used cocaine on or before October 1, 2020. (Am. VR3 at 3-4).

In advance of an anticipated hearing, the Government submitted its proposed exhibits to the District Court, which included a cellphone video taken on March 3, 2020, that showed Khan holding a knife.

(Dkt. 62). The Government also described that Victim-1 "told [a law enforcement officer] that Victim-2 had taken a cellphone video of the defendant holding the first knife and yelling, before the defendant's mother convinced the defendant to put the knife down." (Dkt. 62 at 4). Ultimately, instead of proceeding to a hearing, Khan admitted to Specifications Three through Five on March 3, 2021. (A. 68-69). In response to an order from the District Court, the parties entered a joint letter in advance of sentencing that described the undisputed facts pertaining to Specification Three. (Dkt. 82). In addition to agreeing that Khan yelled at his brother-in-law while waving a knife, the parties specified that Khan's actions led his brother-in-law to fear for his physical safety, and that such fear was rational. (Dkt. 82 at 1). The letter also specified that the Government would not dispute that the argument arose from a disagreement about whether Khan's sister and brother-in-law were improperly withholding money belonging to Khan's mother, and that Khan did not threaten to kill his brother-in-law. (Dkt. 82 at 1).

## C. Khan's Sentencing

In a written submission in advance of sentencing, Khan requested a non-incarceratory sentence. (Dkt. 85). The Government requested a sentence at the statutory maximum of 6 months' imprisonment. The Government repeatedly referenced the criminal conduct underlying Khan's original conviction, and quoted this Court's instruction that the sentencing court should "not sanction only the breach of trust" demonstrated by the violation, but "[r]ather . . . resentence[] the defendant for the crime of conviction mindful that he has

breached the trust placed in him by a probationary sentence." (Dkt. 86) (citing *United States v. Verkhoglyad*, 516 F.3d 122, 130 n.6 (2d Cir. 2008)).

On May 20, 2021, the parties appeared before Judge Wood for sentencing. (A. 74-92). The District Court heard extensive argument from Khan's counsel in support of his request for a non-incarceratory sentence. (A. 77-85). The Government described the "tremendous amount of trust" that had been placed in Khan: he had been charged with wire fraud and was permitted to plead to a misdemeanor offense, and the District Court had imposed a probationary sentence despite the Government's request for a term of incarceration. (A. 86-87). Khan breached that trust by gesturing at his brother-in-law with a knife while yelling, and then subsequently using narcotics on more than one occasion. (A. 87). In asking for a 6-month term of imprisonment, the Government emphasized "the underlying seriousness of Mr. Khan's offense back in 2016 and 2017, and then the trust placed in him by this Court, by the government," and the "fact that he violated and breached that trust." (A. 88).

Before imposing sentence, Judge Wood reviewed the pertinent Section 3553(a) factors, including the seriousness of the offenses, Khan's history and characteristics, the need for deterrence, and the need for the sentence to reflect the seriousness of Khan's criminal history. (A. 89-90). Judge Wood noted that the violation conduct constituted "serious violations of the conditions of probation" (A. 89), and explained that the "question is, was he careful not to violate the Court's trust and the latitude that he received from both law

enforcement and the Court." (A. 89). Judge Wood ultimately sentenced Khan to the statutory maximum of 6 months' imprisonment, with no term of supervised release to follow. (A. 89).

## ARGUMENT

### POINT I

### Khan's Appeal Will Soon Be Moot

Khan challenges the reasonableness of his sentence, but his appeal will shortly become moot. According to the Federal Bureau of Prisons ("BOP"), Khan is due to be released from federal custody on January 30, 2022. (*See* BOP Inmate Locator, *https://www.bop.gov/inmateloc*). If Khan's appeal is not decided before his release date, this Court should dismiss the appeal as moot.

"A case becomes moot when it no longer satisfies the 'case-or-controversy' requirement of Article III, Section 2 of the Constitution." *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). "In order to satisfy the case-or-controversy requirement, a party must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision." *Id.* (citing *Spencer*, 523 U.S. at 7). Accordingly, this Court must generally dismiss a case as moot "if an event occurs during the course of the proceedings or on appeal that makes it impossible for the court to grant any effectual relief whatever to the prevailing party." *United States v. Williams*, 475 F.3d 468, 479 (2d Cir.

2007) (citing *United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006)).

When a defendant challenges a criminal conviction, it is presumed that the appeal "presents a justiciable case or controversy even after the expiration of the sentence that was imposed as a result of the conviction" because "most criminal convictions do in fact entail adverse collateral legal consequences." *United States v. Probber*, 170 F.3d 345, 348 (2d Cir. 1999) (citing *Spencer*, 523 U.S. at 12). By contrast, "an individual challenging the revocation of his parole—and whose term of re-incarceration has expired—bears the burden of demonstrating that some concrete and continuing injury continues to flow from the fact of the revocation." *Probber*, 170 F.3d at 348. Otherwise, any challenge to the revocation will be deemed moot. *Id.* at 348-49.

In this appeal, Khan does not contest the validity of his probation revocation but contends that his revocation sentence was unreasonable. Because the 6-month sentence imposed by Judge Wood is set to expire in less than a month, Khan's appeal should be dismissed as moot if he is released before this appeal is decided. *See United States v. Benton*, 763 F. App'x 130, 131 (2d Cir. 2019). This Court has recognized that where a defendant is still serving a term of supervised release, a sentencing appeal may not be moot if the defendant can show that a favorable appellate decision might prompt the district court to reduce the length of supervised release. *See, e.g.*, *United States v. Aldeen*, 792 F.3d 247, 250 n.2 (2d Cir. 2015), *superseded by statute on other grounds*; *Levine v. Apker*, 455 F.3d 71,

77 (2d Cir. 2006). But Khan was not sentenced to a term of supervised release and thus has nothing concrete to gain from this appeal once he is released. *See Probber*, 170 F.3d at 347 (dismissing appeal as moot where the defendant's revocation sentence had expired and the district court had not imposed a period of supervised release); *see also United States v. Wiltshire*, 772 F.3d 976, 978-79 (2d Cir. 2014) (explaining that *Probber* "held that Probber's appeal was moot because the full term of imprisonment—the sole penalty imposed—had been served before his appeal was heard"); *United States v. Lockett*, 841 F. App'x 342, 343 (2d Cir. 2021) (dismissing appeal as moot where defendant had "completed his revocation sentence and was released from prison," and the district court had "imposed no period of supervised release to follow his latest prison term").

## POINT II

## Khan's Sentence was Reasonable

Khan challenges his sentence of 6 months' imprisonment, asserting that the District Court committed procedural error by relying too much on the seriousness of the violation conduct in fashioning the sentence, and substantive error by imposing an unduly harsh sentence. (Br. 15-31). Neither argument has merit.

### A. Applicable Law

A district court may, after considering certain factors set forth in Section 3553(a), revoke a defendant's term of supervised release and require the defendant

to serve a term of imprisonment. *See* 18 U.S.C. § 3583(e). "Sentences for violations of supervised release are reviewed under the same standard as for sentencing generally: whether the sentence imposed is reasonable." *United States v. Brooks*, 889 F.3d 95, 100 (2d Cir. 2018). Among other things, a sentence is procedurally unreasonable if the district court "fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence." *Aldeen*, 792 F.3d at 251 (citing *United States v. Chu*, 714 F.3d 742, 746 (2d Cir. 2013)).

"Reasonableness is reviewed under a deferential abuse-of-discretion standard." *United States v. Smith*, 949 F.3d 60, 66 (2d Cir. 2020). Where a defendant does not raise "procedural objections to the district court at the time of sentencing," this Court reviews "his claims for plain error." *Verkhoglyad*, 516 F.3d at 128. Under plain error review, a defendant is required "to demonstrate that (1) there was error, (2) the error was plain, (3) the error prejudicially affected his substantial rights, and (4) the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Pattee*, 820 F.3d 496, 505 (2d Cir. 2016).

This Court reviews "the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard," *Gall v. United States*, 552 U.S. 38, 51 (2007), "tak[ing] into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantages of district courts," *United*

*States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008). A defendant arguing substantive unreasonableness "bears a heavy burden because [appellate] review of a sentence for substantive reasonableness is particularly deferential." *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012). This Court defers to a sentencing judge's "own sense of what is a fair and just sentence under all the circumstances," *United States v. Jones*, 460 F.3d 191, 195 (2d Cir. 2006), and will not "substitute [its] own judgment for the district court's on the question of what is sufficient to meet the § 3553(a) considerations in any particular case," *Cavera*, 550 F.3d at 189. "[A] district court's *substantive* determination" will be set aside "only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *Cavera*, 550 F.3d at 189. Stated otherwise, "only those sentences that are so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the administration of justice" will be deemed substantively unreasonable. *Broxmeyer*, 699 F.3d at 289.

## B. Discussion

### 1. Khan's Sentence was Procedurally Reasonable

Khan argues that the District Court "erred procedurally by relying on the perceived 'seriousness' of the violation conduct," rather than Khan's breach of trust, when determining the proper revocation sentence. (Br. 16). Khan did not raise any procedural objection at sentencing, so his procedural-reasonableness claim

is reviewed only for plain error. Khan cannot establish a procedural defect in his sentence, plain or otherwise. It is apparent from the record that Judge Wood properly sentenced Khan principally for the breach of trust reflected in his serious and repeated violations of probation despite receiving leniency from the Government and the District Court after his original offense.

A "revocation of probation requires a defendant to be resentenced on the crime of conviction," and sanctions "primarily the defendant's breach of trust." *Verkhoglyad*, 516 F.3d at 136. Judge Wood followed those dictates and made clear that the overarching "question" driving her assessment "is, was he careful not to violate the Court's trust and the latitude that he received from both law enforcement and the Court." (A. 89). The answer to that question, as Judge Wood reasonably found, was no. After pleading guilty to a misdemeanor, rather than the felony offense with which he was originally charged, Khan received a non-incarceratory sentence, despite the seriousness of his underlying offense. On the heels of that leniency, Khan squandered the trust placed in him by the Government and the District Court by unlawfully possessing a knife and using narcotics on multiple occasions. *See United States v. Dowdell*, No. 20-4094, 2021 WL 5170728, at *3 (2d Cir. Nov. 8, 2021) (breach of trust "particularly acute" where defendant committed additional violations after first revocation hearing).

Judge Wood's analysis dovetailed with the Government's sentencing presentation, which emphasized Khan's breach of trust and the need to resentence Khan more harshly for the crime of conviction. (Dkt.

86; A. 88). Notably, Khan does not argue that the Government advocated for a 6-month sentence based on impermissible considerations. To the contrary, the Government described the "tremendous amount of trust" that had been placed in Khan, and properly stressed "the underlying seriousness of Mr. Khan's offense back in 2016 and 2017, and then the trust placed in him by this Court, by the government," and the "fact that he violated and breached that trust." (A. 88; *see also* Dkt. 86 (referring to Khan's "flagrant disregard for the tremendous leniency already afforded to him" and the higher sentence Khan would have faced on the underlying offense had the Government insisted on a felony disposition)). The record shows that the District Court "read the sentencing submission by defense counsel and by the government," further belying any claim of plain error. (A. 77).

On appeal, Khan focuses on statements the District Court made about the seriousness of his violation conduct. (Br. 25). But to the extent Judge Wood described Khan's "serious violations of the conditions of probation" (A. 89), it was in the proper context of evaluating the degree of Khan's breach of trust. This Court has explained that the district court should "consider the [violation] conduct in context to determine the extent to which it reflected a betrayal of the court's trust in imposing a non-incarceratory sentence for the underlying . . . conviction." *Verkhoglyad*, 516 F.3d at 132. Judge Wood did precisely that, by focusing on the "latitude" that Khan originally received from the Government and the District Court in determining that his breach of trust was particularly severe. *United States v. Allen*, 662 F. App'x 80, 84 (2016) (district court may

impose a higher revocation sentence "based on its previous leniency toward the defendant"). As this Court has recognized, the seriousness of the violation itself is plainly a proxy for the magnitude of a defendant's breach of trust. *See, e.g.*, *Verkhoglyad*, 516 F.3d at 135 (explaining that the nature of a defendant's violation is relevant to determining the nature of the defendant's breach of trust); *Dowdell*, 2021 WL 5170728, at *3 (explaining that "the violations that" a probationer committed can be a basis for the "sentence imposed"). As a matter of the most basic common sense, certain violations constitute a lesser breach of trust than others—missing a scheduled call with the Probation Office, for example, while serious, is plainly less of a betrayal than robbing a bank. For that reason, the United States Sentencing Guidelines (the "Guidelines") recognize that the "seriousness of the underlying violation and the criminal history of the violator," *should* be taken into account to a "limited degree," U.S.S.G. Ch. 7, Pt. A(3)(b). Judge Wood adhered to those boundaries.

Khan relies heavily on *United States v. Sindima*, 488 F.3d 81 (2d Cir. 2007), but that reliance is misplaced. (Br. 26). In *Sindima*, this Court remanded for further proceedings after the district court imposed an above-Guidelines revocation sentence based principally on "Sindima's recidivism in the face of the 'substantial break' he received in his original sentence." 488 F.3d at 86-87. But there, the error was imposing "a sentence substantially in excess of the advisory Guidelines maximum," in reliance on a "factor for which the Guidelines range was designed to account: Sindima's breach of the district court's trust that he

would abide by the terms of his probation in return for having avoided incarceration." *Id.* at 87. Far from being irrelevant to a revocation sentence, a defendant's violation conduct drives the applicable Guidelines range for supervised release violations following a felony offense—the Guidelines have a "three-tiered system … based on the defendant's actual conduct." *Sindima*, 488 F.3d at 86 (citing U.S.S.G. § 7B1.1 cmt. n.1). Here, by contrast, there was no applicable Guidelines range; the Guidelines do not apply to Class B misdemeanor offenses, such as violations of 18 U.S.C. § 716. *See* U.S.S.G. § 1B1.9. Particularly here, where the seriousness of the violation conduct was not baked in to an applicable Guidelines range, it was appropriate for Judge Wood to account for the nature of Khan's violation conduct in evaluating his breach of trust.

Finally, Khan cannot show that any error affected his substantial rights. *See Pattee*, 820 F.3d at 505. Specifically, had Judge Wood placed greater emphasis on the need to resentence Khan for the original offense of conviction, it would only have further supported the need for a sentence at the statutory maximum. As the Government argued, Khan's Guidelines exposure on the underlying criminal conduct would have subjected him to a period of incarceration far above that imposed by Judge Wood on the violation: "[h]ad Khan been convicted of felony wire fraud on the underlying charge, he would have faced a substantial period of incarceration, at least 18 to 24 months,'" and he also would have been eligible for an upward departure under U.S.S.G. § 5K2.24, for using a counterfeit insignia during the felony offense. (Dkt. 86 at 3). Resentencing Khan to 6 months' imprisonment on the underlying offense was

thus amply justified and Khan cannot demonstrate prejudice from the purported error.

## 2. Khan's Sentence was Substantively Reasonable

Khan also claims that his sentence was "unreasonably harsh." (Br. 27). This amounts to a disagreement with how the District Court chose to balance the different sentencing factors, but "[t]he particular weight to be afforded aggravating and mitigating factors is a matter firmly committed to the discretion of the sentencing judge." *Broxmeyer*, 699 F.3d at 289.

Khan cannot demonstrate that his sentence was "shockingly high." *Broxmeyer*, 699 F.3d at 289. He received extremely lenient treatment when he was originally sentenced to probation in 2018, despite committing a serious offense that involved fraud and impersonating law enforcement. That offense showed Khan's disrespect for the law and undermined the trust ordinary citizens should have that individuals bearing law enforcement badges are in fact acting under color of law. This crime was also not Khan's first: he had a lengthy history of prior offenses, beginning when he was a juvenile and escalating as an adult to offenses involving narcotics, obstruction, and harassment. (PSR ¶¶ 13-25). His subsequent violations of probation despite the sentencing court's prior leniency constituted a serious breach of trust that required substantial punishment.

Khan repeats mitigating arguments on appeal that the District Court already considered in fashioning the appropriate sentence. (Br. at 27-28). The District

Court did not, as Khan claims, "ignore[ ] Mr. Khan's progress and rehabilitation," or other mitigation arguments. (Br. at 28). For one, there is a "strong presumption that the sentencing judge has considered all arguments properly presented to her, unless the record clearly suggests otherwise." *United States v. Fernandez*, 443 F.3d 19, 29 (2d Cir. 2006). And here, the record shows that Judge Wood carefully considered Khan's arguments. (*See, e.g.*, A. 77 ("I have read the sentencing submission by defense counsel and by the government. I will be glad to hear anything that defense counsel wishes to say with respect to the sentence.")). While Khan touts his "transformation" prior to sentencing (Br. at 28-29), the District Court was reasonably unpersuaded; the Probation Office described Khan's adjustment to supervision as "marginal" (Am. VR3 at 2), Khan committed several discrete and serious probation violations over the course of several months, and those violations were only the latest crimes in a lengthy criminal history. (PSR ¶¶ 13-25). Judge Wood also considered Khan's argument that he suffered from "maladaptive coping mechanisms," but reasonably concluded that this was outweighed by the "latitude" Khan had previously "received from both law enforcement and the Court." (A. 89).

In sum, Judge Wood was well within her discretion in determining that Khan's arguments did not overpower the substantial breach of trust committed by Khan after he had already been afforded a second chance. Judge Wood thus reasonably determined that the goals of sentencing, including the "seriousness of [Khan's] criminal history" and the need to "provide

adequate deterrence," required a 6-month term of imprisonment. (A. 89). That sentence fell comfortably within the "the range of permissible decisions" available to the district court. *Cavera*, 550 F.3d at 189.

## CONCLUSION

**The judgment of revocation should be affirmed.**

Dated:    New York, New York
          January 3, 2022

                    Respectfully submitted,

                    DAMIAN WILLIAMS,
                    *United States Attorney for the*
                    *Southern District of New York,*
                    *Attorney for the United States*
                    *of America.*

SAMUEL RAYMOND,
DANIELLE R. SASSOON,
    *Assistant United States Attorneys,*
            *Of Counsel.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of the Federal Rules of Appellate Procedure and this Court's Local Rules. As measured by the word processing system used to prepare this brief, there are 4,165 words in this brief.

DAMIAN WILLIAMS,
*United States Attorney for the*
*Southern District of New York*

By: DANIELLE R. SASSOON,
*Assistant United States Attorney*